IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANNA MAE TERRY**, | : | Civil Action No. 1:12-CV-263 |
| Plaintiff, | : | (Chief Judge Conner) |
| v. | : | |
| **NORTHROP GRUMMAN HEALTH PLAN**, | : | |
| Defendant. | : | |

## MEMORANDUM

Plaintiff Anna Mae Terry filed the above-captioned action against defendant Northrop Grumman Health Plan (the "Plan") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, as amended ("ERISA"). Presently before the court in the above-captioned matter is the Plan's motion for summary judgment (Doc. 40) regarding the claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). For the reasons that follow, the court will grant the motion for summary judgment (Doc. 40).

## I. Factual Background & Procedural History

David J. Terry, the late husband of plaintiff Anna Mae Terry, worked for the Northrop Grumman Corporation ("Northrop Grumman") at its facility in Hagerstown, Maryland from 2004 until the facility closed in late 2010. (Doc. 41 ¶¶ 1, 3). Defendant Northrop Grumman Health Plan is an employee benefit plan under ERISA. (Id. ¶ 10). The Plan funded life insurance for its participants by purchasing a basic life insurance policy from Metropolitan Life Insurance Company

("MetLife"). (Id. ¶ 11). Employees could also procure additional, optional life insurance from MetLife. (Id.) As an employee, Mr. Terry participated in Northrop Grumman's basic and optional life insurance plan, from which Mrs. Terry would be entitled to receive a total sum of $110,000 upon his death. (Id. ¶¶ 2, 6).

Under the Plan, basic and optional life insurance coverage ends on a participant's employment termination date. (Id. ¶ 12). Thus, in July 2010, prior to the facility's closure, Northrop Grumman provided Mr. Terry with a document entitled: "Overview of Benefits in Connection with Layoff: For employees impacted by the facility closing at the Hagerstown Maintenance and Modification Center." (Id. ¶ 3). The document informed all participants in the life insurance plan that, after termination, "[y]ou have 31 days to choose to convert basic and optional coverage for self and family to individual whole life policies, or choose portability for optional coverage."[1] (Id.)

On or about October 18, 2010, Northrop Grumman informed Mr. Terry that he would be laid off from his position as of October 29, 2010. (Id. ¶ 4). On November 3, 2010, the Plan, through its vendor, Aon Hewitt ("Hewitt"), sent Mr. Terry certain notices and certificates required by the Plan and the Consolidated Omnibus Reconciliation Act ("COBRA"). (Id. ¶ 21). The notices allegedly included

---

[1] "Conversion" allows a former employee to continue life insurance coverage by converting the policy to an individual life insurance policy without submitting new medical exams and related assessments. (Doc. 41 ¶ 3 n.2). "Porting" an optional group life insurance policy means that a former employee may maintain optional coverage through the employer's group policy on the same terms for a period of time. (Id.)

2

a "Health and Welfare Conversion Notice" and a "Health and Welfare Portability Notice" regarding Mr. Terry's right to convert his basic life insurance coverage and right to port his optional life insurance coverage, respectively, upon termination. (Id. ¶¶ 22-23). Mrs. Terry denies that Mr. Terry received these two notices. (Doc. 44 ¶¶ 21-25, 27-28).

On January 2, 2011, Mr. Terry unexpectedly passed away as a result of a heart attack. (Doc. 41 ¶ 5). Mr. Terry did not convert or port his life insurance coverage at any time after October 29, 2010 and prior to his death. (Id. ¶ 7). On February 8, 2011, Mrs. Terry submitted a claim form requesting life insurance benefits from the basic and optional life insurance policies with MetLife. (Id. ¶ 52). Mrs. Terry stated that, prior to his death, Mr. Terry was working with the Northrop Grumman Benefits Center to continue his life insurance. (Id.) On February 22, 2011, the Northrop Grumman Benefits Center sent Mrs. Terry a letter denying her claim for life insurance benefits. (Id. ¶ 57). The denial letter explained that, even though notices were mailed to his residence on November 3, 2010, Mr. Terry had failed to timely convert or port life insurance coverage after his termination and his death occurred beyond the 31-day period. (Id. ¶ 59). The denial letter also indicated that the Plan was treating Mrs. Terry's claim as an administrative claim. (Id. ¶¶ 17, 58). In order to appeal the denial of her claim, Mrs. Terry was required to submit a written request for review within 65 days of receipt of the February 22, 2011 letter. (Id. ¶¶ 18, 60). Mrs. Terry eventually submitted an appeal on June 23, 2011. (Id. ¶ 67). On September 12, 2011, Northrop Grumman's Health and Welfare

Appeals Subcommittee sent Mrs. Terry a letter upholding the denial of Mrs. Terry's claim. (Id. ¶ 71).

On February 10, 2012, Mrs. Terry filed the complaint (Doc. 1) against the Plan. In the complaint, Mrs. Terry alleges claims for life insurance benefits, breach of fiduciary duty, and statutory penalties under ERISA, as well as a related state law claim for benefits. (Doc. 1). On January 9, 2013, the court adopted the report and recommendation of Magistrate Judge Methvin, granting a motion to dismiss the state law claim. (Doc. 30). On July 18, 2013, the Plan filed the instant motion for summary judgment (Doc. 40), asserting that it is entitled to judgment as a matter of law on the three remaining ERISA claims. Mrs. Terry subsequently conceded her claim for life insurance benefits and statutory penalties. (See Doc. 43 at 12, 16) (stating that "[p]laintiff will not succeed in her claim under [29.U.S.C. §] 1132(a)(1)(B)."). Thus, the only issues before the court are (1) whether the Plan's fiduciaries breached a fiduciary duty to provide Mr. Terry with the necessary information to effectively and timely convert or port his life insurance benefits, and (2) whether the remedy sought is an appropriate equitable remedy under 29 U.S.C. § 1132(a)(3). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in

4

support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315. Accordingly, the court will view the facts "in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).

## III.  Discussion

The Plan moves for summary judgment on the following grounds: (1) the Plan's fiduciaries did not breach their fiduciary duty because they supplied Mr. Terry with all the information needed to timely convert or port his life insurance benefits, and (2) an award of previously denied life insurance benefits is not an appropriate equitable remedy under section 1132(a)(3). Assuming *arguendo* that the Plan's fiduciaries breached their fiduciary duty to provide necessary information, the court nonetheless holds that Mrs. Terry does not seek a recognized equitable remedy under 29 U.S.C. § 1132(a)(3).

Section 1132(a)(3) provides that a participant, beneficiary, or fiduciary may pursue a civil action "(A) to enjoin any act or practice which violates any provision of [ERISA or the terms of the plan], or (B) to obtain *other appropriate equitable*

5

*relief* (i) to redress such violations or (ii) to enforce any provisions of [ERISA or the terms of the plan]." 29 U.S.C. § 1132(a)(3) (emphasis added); see 29 U.S.C. §§ 1101-14 (setting forth ERISA provisions related to fiduciary duties); In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 57 F.3d 1255, 1264 (3d Cir. 1995) (stating that failure to provide information with knowledge that such failure may cause harm constitutes breach of fiduciary duty).

The Supreme Court has emphasized that equitable relief to redress violations or enforce relevant provisions refers only to "those categories of relief that were *typically* available in equity." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)). One such equitable remedy is money damages as restitution. Mertens, 508 U.S. at 256. However, the Court in Knudson recognized a distinction between legal and equitable restitution. Knudson, 534 U.S. at 212-13. A plaintiff seeks legal restitution when he or she cannot assert title or right to the money or property at issue, but he or she may be able to demonstrate grounds for recovering money for some benefit conferred upon defendant. Id. at 213. In other words, the plaintiff seeks a judgment imposing personal liability upon defendant to pay a sum of money, such as for a breach of contract claim. Id. A plaintiff requests equitable restitution, on the other hand, when the money or property at issue belongs to the plaintiff and can be clearly traced to particular funds or property in the defendant's possession. Id. at 213-14. The defendant essentially holds a constructive trust or an equitable lien over the plaintiff's money or property, respectively. Id. Under section

6

1132(a)(3), a plaintiff may only seek equitable restitution, not legal restitution. Id. at 214; see also Unum Life Ins. Co. of Am. v. Grourke, 406 F. Supp. 2d 524, 527-29 (M.D. Pa. 2005).

In the case *sub judice*, Mrs. Terry requests that the court award her "the insurance benefits that she [is] entitled to, along with costs, interest, and attorneys' fees." (Doc. 1 at 6). Applying the *ratio decidendi* of Knudson, Mrs. Terry seeks to hold the Plan liable for a breach of its fiduciary duty to provide necessary information, which resulted in the termination of Mr. Terry's life insurance policies before he could convert or port them. Thus, Mrs. Terry clearly seeks legal restitution because she requests a monetary award equal to the benefits of the terminated life insurance policies.

Numerous courts have held that a plaintiff cannot sue for breach of fiduciary duty under section 1132(a)(3) in order to obtain a judgment for denied benefits. See, e.g., Alberti v. Ron Lewis Auto. Grp., No. 2:05CV100, 2006 WL 2773254, at *7 (W.D. Pa. Sept. 12, 2006) (finding that requested healthcare benefits due to breach of fiduciary duty to provide COBRA coverage information was a claim for legal restitution and, therefore, not an equitable remedy available under section 1132(a)(3)); Tannenbaum v. UNUM Life Ins. Co., No. 03-CV-1410, 2004 WL 1084658 (E.D. Pa. Feb. 27, 2004) (rejecting plaintiff's demand for unpaid disability benefits due to defendant's breach of fiduciary duty as legal restitution, rather than equitable restitution); Hartman v. Wilkes-Barre Gen. Hosp., 237 F. Supp. 2d 552, 557 (M.D. Pa. 2002) (holding that a breach of fiduciary duty claim to recover

7

previously denied long-term disability benefits is not a claim for equitable relief under section 1132(a)(3)).

For these reasons, Mrs. Terry fails to demonstrate that she is entitled to appropriate equitable relief under section 1132(a)(3) for a breach of fiduciary duty claim. See Grourke, 406 F. Supp. 2d at 529-30 (M.D. Pa. 2005) (denying plaintiff's motion for summary judgment for failure to pursue a recognized basis for equitable relief under section 1132(a)(3)). Accordingly, the court will grant the Plan's motion for summary judgment (Doc. 40).

An appropriate order will issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: December 13, 2013